UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Kenneth Hart,
     Petitioner

     v.                                 Case No. 18-cv-424-SM
                                           Opinion No. 2020 DNH 076
Warden, N.H. State Prison,
     Respondent

**O R D E R**

More than 20 years ago, in February of 2000, Kenneth Hart was convicted in state court of two counts of aggravated felonious sexual assault (rape), witness tampering, and resisting arrest.  He was sentenced to serve 10 to 20 years in prison on the sexual assault convictions, with suspended sentences on the remaining convictions.  In this federal habeas corpus petition, Hart asserts that he is entitled to "relief from his wrongful conviction" on grounds that: (1) he was not competent to stand trial; and (2) when he elected to represent himself at trial, he did not knowingly, voluntarily, and intelligently waive his right to be represented by legal counsel.

Pending before the court is respondent's motion for summary judgment.  For the reasons discussed, that motion is granted and Hart's Amended Petition for Habeas Corpus Relief is denied.

### Background

Since his incarceration, Hart's mental illness has been well-documented.  Indeed, there were suggestions of that illness even before his trial.

When Hart dismissed his third court-appointed attorney and notified the trial court of his intention to represent himself, the court ordered a mental status evaluation to assess his "current competency to stand trial and particularly his ability to clearly and effectively waive his constitutional right to counsel."  Superior Court Order dated March 17, 1999 (document no. 40-2) at 5.  Hart was evaluated by Dr. Albert Drukteinis.  On July 21, 1999, the trial court held a competency hearing, at which Dr. Drukteinis testified.  See Transcript of Competency Hearing (document no. 40-3).  Among other things, Dr. Drukteinis testified that:

1.  He conducted a formal evaluation of Hart, which included a routine psychiatric interview, a mental status examination, a cognitive capacity examination, and a "competency-to-understand-trial" assessment.  Id. at 7.

2.   On the <u>mental status</u> exam, Hart was not agitated,
nor did he show any unusual motor behavior; there
was no sign he was hallucinating, nor that he had
any delusions; he had some paranoid thinking,
reflected by a "vague sort of mistrust about lots
of people;" he was "oriented and he did not
appear to be suffering from any brain diseases as
such." <u>Id</u> at 9-10.

3.   On the <u>cognitive capacity</u> screening, Hart was
well oriented and displayed good memory; "His
calculations were good, basic abstract thinking
was good.  He could become distractible at times,
but again nothing to suggest that he was
psychotically disorganized;" <u>Id</u>. at 11.

4.   On the <u>competency to stand trial</u> assessment, Hart
"was well aware of his charges and he could
discuss a number of them in detail;" he
understood the charges against him were serious;
he understood that he could not be compelled to
testify at trial; he had not decided whether he
would testify because he still wanted to discuss
that issue with stand-by counsel; he understood
the role of various participants in the trial -
witnesses, defense counsel, prosecutor, and
judge; "he was quite detailed and accurate in all
of that;" he spoke of dissatisfaction with two
prior attorneys because they did not challenge
probable cause sufficiently at earlier hearings;
"in general, as criminal defendants go that I've
evaluated, he answered ninety-nine percent of the
questions very well." <u>Id</u>. at 12-15.

5.   As for a <u>clinical diagnosis</u> of Mr. Hart, Dr.
Drukteinis opined that: "Mr. Hart has no signs of
an acute psychotic illness.  He's not
disoriented, he's not deranged, he's in contact
with reality and there's nothing patently absurd
about his thinking process.  I do think that
there is some evidence of paranoid personality
traits and some grandiosity;" he likely suffers
from a nonspecific kind of personality disorder
that does "not rise to the level of a major
mental illness that should prevent him from being
competent to stand trial." <u>Id</u>. at 16-17.

6.  Based upon his evaluation of Mr. Hart, Dr.
    Drukteinis opined that: Hart "is competent to
    stand trial;" and "could rationally work with his
    attorney and rationally follow the proceedings."
    Id. at 17-18.

Following that hearing, the trial court concluded that Hart was competent to stand trial.  Id. at 42.  See also Superior Court Order dated July 21, 1999 (document no. 40-4).


Nevertheless, the trial court recognized that additional inquiry was required before it could grant Hart's motion to waive his constitutionally protected right to counsel.  See, e.g., Godinez v. Moran, 509 U.S. 389, 402 (1993) ("[W]hen a defendant seeks to waive his right to counsel, a determination that he is competent to stand trial is not enough; the waiver must also be intelligent and voluntary before it can be accepted.").  Accordingly, the court held an additional hearing on Hart's motion to waive his right to counsel and to represent himself at trial.  Because it is central to Hart's habeas claims, the colloquy probably bears recounting in some detail:

    THE COURT: Mr. Hart, still wish to proceed pro se in
    this matter; is that correct?
    MR. HART: Good morning, Judge.
    THE COURT: Good morning.
    MR. HART: Yes, I'm prepared to proceed pro se.
    THE COURT: That's what you want to do?
    MR. HART: That's what I want to do.

4

THE COURT: You understand you have the absolute right under the federal and state constitutions to be represented by counsel?

MR. HART: I do understand that right.

THE COURT: And even though you can't afford your own counsel the state appoints one for you; you understand that?

MR. HART: I understand that as well.

THE COURT: I just want to be clear, understanding all of this and understanding the absolute right you have to counsel, it is your desire not to have counsel, to waive your right to counsel and to proceed to represent yourself?  I just want to be very clear about that.

MR. HART: Yes, that's correct, it is my right and it is my knowing and intelligent opinion to waive counsel and to proceed pro se.

THE COURT: Okay.  Now, it is incumbent upon me under the law -- well, you understand, Mr. Hart, that now – we're dealing here with - what is the maximum penalty, ten to twenty on these, counsel?

MS. O'NEIL: That's right.

THE COURT: There's a maximum sentence on each one of these charges of not less than ten years nor more than -- not more than ten years to twenty years on each one of these charges.  If you were found guilty you could be sentenced to that imprisonment term on each one of them consecutive; do you understand that?

MR. HART: I understand that there's a maximum penalty, yes.

THE COURT: And you understand that as representing yourself you are going to be required to follow the Rules of Evidence, follow the rules of court, many things which take lawyers years and years to understand, and quite frankly some of them still don't understand them?  Do you understand that you are going to have to pick a jury?

MR. HART: Yes.

THE COURT: That you are going to have to examine witnesses on direct and cross-examination?

MR. HART: Yes.

THE COURT: You are going to have to make an opening statement to the jury, you are going to have to make a closing argument; do you understand all of these things that you are going to have to do?

MR. HART: I understand I'll have to do all the things that a licensed attorney would have to do.

THE COURT: <u>Those aren't easy things, Mr. Hart.</u>
MR. HART: <u>I don't think they are easy at all.</u>
THE COURT: Do you also understand that I can't treat
you any differently than if you were represented by a
lawyer; in other words, I can't kind of help you out
or give you breaks, or anything like that; do you
understand that?
MR. HART: Yes.
THE COURT: Okay. I can't cut you any slack, I guess is
what I'm trying to tell you.
MR. HART: I will be allowed the advantages and the
authority of being a licensed attorney?
THE COURT: Pardon?
MR. HART: I will be allowed . . .
THE COURT: I'm going to give you standby counsel;
okay?
MR. HART: I'll ask the question again, then.  I'll be
allowed the advantages and the authority of a licensed
attorney?
THE COURT: You will be allowed to do all the things in
this courtroom that a licensed attorney could do,
yeah, I mean if that's -- if I understand your
question properly.
MR. HART: So then any type of legal research and
defense tools I will also be allowed those?
THE COURT: Well, to the extent I would grant them to
any client you will be allowed them.  When we start
getting into matters about use of the law library and
everything while you are incarcerated that always
creates problems and we will deal with those
accordingly.
But one thing I guess that I think - I know you
understand this because I know you have gone over this
with Judge Barry as well before - but when you
represent yourself, I mean this is you are emotionally
involved in your case, obviously, because it deals
with you.
MR. HART: That's right.
THE COURT: And one of the things about a lawyer is
that a lawyer is always able to be, hopefully,
objective and dispassionate and therefore could look
at things clearly without making decisions that, you
know, may be affected by his personal involvement in
the case; whereas you representing yourself, you know,
you've got to deal with your own emotional involvement
in the case and to the extent it can cloud your
complete objectivity.  I mean you understand you at

> least have to deal with that problem if you are going
> to represent yourself, you understand that?
> MR. HART: <u>I do understand.  I have no clouded
> misunderstanding at this time</u>.

Hearing on Motion to Proceed Pro Se (document no. 40-5) at 3-9

(emphasis suppled).  After conducting that colloquy with Hart

(and, having already concluded that he was competent to stand

trial), the trial court determined that Hart understood his

constitutional right to counsel and that he knowingly,

intelligently, and voluntarily waived that right.

> THE COURT: All right.  Well, based on your sincere and
> apparently unwavering desire to waive your right to
> counsel and represent yourself, and based on the fact
> that you do appear to understand the pitfalls of
> representing yourself and what is going to be expected
> of you, I will let you proceed pro se in this matter.
> I will appoint a standby counsel so that you will have
> someone who can assist you in and advise you as to
> procedures, and things of that nature, as I guess you
> already have been working with Mr. Pendleton on that
> kind of a basis for a while.
>
> MR. HART: Yes; that's correct.
>
> THE COURT: So he'll be there to help you out when you
> need someone to help you do something, he will be
> there for you.

<u>Id</u>. at 8-9.  <u>See also</u> Superior Court Order dated August 31, 1999

(document no. 40-6) (concluding that "the defendant has

knowingly, intelligently and voluntarily waived his right to

counsel. . . . [He] is aware of the serious nature of the

charges against him, the potential sentence which may be

imposed, the complex factual and legal issues presented by this case, and the serious limitations in acting as his own counsel. Nonetheless, the defendant insists on representing himself, and his request to proceed pro se is GRANTED.").  While the court allowed Hart to represent himself, it also appointed standby counsel to assist him.

Following an eight-day trial in January and February of 2000, a jury convicted Hart on all charges (evidence of his guilt was overwhelming).  Although Hart apparently considered filing an appeal to the New Hampshire Supreme Court, he never did so.  On February 28, 2001 (more than a year after his convictions and after receiving numerous extensions of the time within which to file an appeal), Hart still had not filed either a notice of appeal or a request for the appointment of appellate counsel.  Consequently, the New Hampshire Supreme Court declared his right of appeal had been waived.

In January of 2017 – nearly seventeen years after his convictions - Hart filed a petition for writ of habeas corpus in the trial court.  In that petition, Hart raised two issues, claiming that: (a) he did not knowingly, intelligently, and voluntarily waive his right to counsel as protected by the Sixth and Fourteenth Amendments to the Constitution; and (b) he was

not competent to represent himself at trial because the state and federal constitutions require "a higher level of minimum competence to represent oneself at trial than to be competent to stand trial."  Superior Court Order dated October 2, 2017 (document no. 40-8) at 49 of 52.  That petition was denied.  See Id.

Hart appealed to the New Hampshire Supreme Court, advancing the same two claims.  Because Hart had already served his entire prison sentence by the time his petition came before the New Hampshire Supreme Court, the court construed his petition as one seeking coram nobis relief.[1]  The court then described Hart's first argument as follows:

> Because the petitioner's claim is based upon the Edwards decision, and thus relies upon an interpretation of the Federal Constitution by the United States Supreme Court, we begin by first addressing his argument that the Federal Constitution mandates a higher minimum standard of competency for defendants who seek to represent themselves at trial than the minimum standard of competency to stand trial with the assistance of counsel. . . . [H]e maintains that, in the wake of the Edwards decision, a higher standard of competency is required, as a matter of federal law, to afford a mentally ill defendant the

---

[1]    In or around 2018, Hart was released from prison.  Shortly before his release, however, it was determined that, due to his mental illness, Hart posed "a potentially serious likelihood of danger to himself and others."  Accordingly, on August 30, 2018, he was involuntarily committed to New Hampshire Hospital.  See Involuntary Admission Order (document no. 40-13).

       right to exercise his or her constitutional right to
       self-representation.

Hart v. Warden, N.H. State Prison, 171 N.H. 709, 719 (2019).

The court considered, and rejected, Hart's claim under both the

state and federal constitutions.  The court also considered and

rejected Hart's second claim: that, due to his mental illness,

he failed to knowingly, voluntarily, and intelligently waive his

right to counsel and, therefore, the trial court erred by

permitting him to represent himself at trial.


       Meanwhile (before he was released from custody), on May 22,

2018, Hart filed a federal petition for habeas corpus relief

under 28 U.S.C. § 2254.  By prior order, the court denied,

without prejudice, the State's motion to dismiss Hart's petition

on grounds that it was untimely.  See Order dated December 6,

2019 (document no. 51).


       Currently pending before the court is the State's motion

for summary judgment.  The State asserts that, in resolving

Hart's federal constitutional claims, the New Hampshire Supreme

Court neither misapprehended the factual record nor misapplied

clearly established Supreme Court precedent.  Moreover, says the

State, any assertion that Hart was not competent to stand trial

was waived in both the state post-conviction (habeas) court and

                                  10

on appeal to the New Hampshire Supreme Court (recall that Hart's claim before those state courts was that he was not competent to represent himself at trial).  Hart objects.

## Standard of Review

Since passage of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") and its amendments to 28 U.S.C. § 2254, the power to grant federal habeas relief to a state prisoner with respect to claims adjudicated on the merits in state court has been substantially limited.  A federal court may not disturb a state conviction unless one of two conditions is satisfied.  The first is met when the state court's adjudication of the petitioner's federal constitutional claims "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  A habeas petitioner seeking relief under that provision faces a substantial burden insofar as "a determination of a factual issue made by a State court shall be presumed to be correct."  28 U.S.C. § 2254(e)(1).

Alternatively, habeas relief may be granted if the state court's resolution of the federal constitutional issues before it "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28

11

U.S.C. § 2254(d)(1).  The Supreme Court explained the
distinction between decisions that are "contrary to" clearly
established federal law, and those that involve an "unreasonable
application" of that law as follows:

> Under the "contrary to" clause, a federal habeas court
> may grant the writ if the state court arrives at a
> conclusion opposite to that reached by [the Supreme]
> Court on a question of law or if the state court
> decides a case differently than [the Supreme] Court
> has on a set of materially indistinguishable facts.
> Under the "unreasonable application" clause, a federal
> habeas court may grant the writ if the state court
> identifies the correct governing legal principle from
> [the Supreme] Court's decisions but unreasonably
> applies that principle to the facts of the prisoner's
> case.

Williams v. Taylor, 529 U.S. 362, 412-13 (2000).  The Court also
noted that an "incorrect" application of federal law is not
necessarily an "unreasonable" one.

> [T]he most important point is that an unreasonable
> application of federal law is different from an
> incorrect application of federal law . . . . Under
> § 2254(d)(1)'s "unreasonable application" clause,
> then, a federal habeas court may not issue the writ
> simply because that court concludes in its independent
> judgment that the relevant state-court decision
> applied clearly established federal law erroneously or
> incorrectly.  Rather, that application must also be
> unreasonable.

Id. at 410-11 (emphasis in original).  Finally, it probably
bears noting that a state court need not rely upon, nor need it
even cite, Supreme Court precedent in order to avoid resolving a

petitioner's claims in a way that is "contrary to" or that involves an "unreasonable application of" clearly established federal law.  See Early v. Packer, 537 U.S. 3, 8 (2002) ("Avoiding these pitfalls does not require citation of our cases - indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.") (emphasis in original).

So, to prevail, the habeas petitioner must demonstrate that "the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Harrington v. Richter, 562 U.S. 86, 103 (2011).  In short, "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal."  Id. at 102-03 (citation and internal punctuation omitted).  As the Harrington Court noted, AEDPA's amendments to section 2254(d) present a substantial hurdle for those seeking habeas relief and impose upon this court a highly deferential standard of review.

> If this standard is difficult to meet, that is because
> it was meant to be.  As amended by AEDPA, § 2254(d)
> stops short of imposing a complete bar on federal-
> court relitigation of claims already rejected in state

proceedings.  It preserves authority to issue the writ
in cases where there is no possibility fairminded
jurists could disagree that the state court's decision
conflicts with this Court's precedents.  It goes no
further.

Harrington, 562 U.S. at 102 (citation omitted).


Only as to federal claims that were presented to the state
court but neither adjudicated on the merits nor dismissed by
operation of a regularly-applied state procedural rule, may this
court apply the more petitioner-friendly de novo standard of
review.  See, e.g., Clements v. Clarke, 592 F.3d 45, 52 (1st
Cir. 2010) ("In contrast, a state court decision that does not
address the federal claim on the merits falls beyond the ambit
of AEDPA.  When presented with such unadjudicated claims, the
habeas court reviews them de novo.") (citation omitted).
Finally, it is probably worth noting that "unadjudicated claims"
are different from claims that were resolved on the merits, but
without any explanation.  See generally Wilson v. Sellers, 138
S.Ct. 1188, 1192 (2018) ("[W]hen the relevant state-court
decision on the merits, say, a state supreme court decision,
does not come accompanied with [the court's] reasons . . . .
[w]e hold that the federal court should 'look through' the
unexplained decision to the last related state-court decision

that does provide a relevant rationale.") (emphasis supplied).
See also Ylst v. Nunnemaker, 501 U.S. 797 (1991).


With those principles in mind, the court turns to Hart's petition and the State's motion for summary judgment.


## Discussion

I.  Claims Properly Before the Court.

The court necessarily begins by noting that it is unclear what federal claims Hart is asserting in his habeas petition. As noted above, his claims before both the state superior (habeas) court and the New Hampshire Supreme Court were consistent and unambiguous.  First, he asserted that he did not knowingly, intelligently, and voluntarily waive his right to counsel as protected by the Sixth and Fourteenth Amendments to the Constitution.  Second, he claimed he was not competent to represent himself at trial because the state and federal constitutions require a higher level of minimum competence to represent oneself at trial than is required merely to stand trial with the assistance of counsel.  That is to say, Hart asserted that the competence to stand trial of a defendant who plans to represent himself must be measured by a higher standard than the one used to assess the competence of a defendant who is represented by counsel.  In support of that claim, Hart relied

upon the Supreme Court's opinion in <u>Indiana v. Edwards</u>, 554 U.S. 164 (2008).  The state habeas court and the New Hampshire Supreme Court addressed, and rejected, both of Hart's claims on the merits.

In his pending federal petition, however, Hart jettisons the second claim (i.e., the "higher standard of competence" for pro se defendants) and substitutes a more traditional claim: that he was not <u>competent to stand trial</u>.  <u>See</u> Amended Petition for Habeas Relief (document no. 40) at 17 ("The petitioner was not competent to stand trial at the time of his trial and therefore his conviction on these charges violates the Due Process Clause of the United States Constitution").  That, however, creates a problem because never before has Hart challenged the trial court's finding that he was competent to stand trial.  Indeed, the New Hampshire Supreme Court specifically noted that Hart <u>did not challenge</u> the trial court's finding that he was competent to stand trial.

> We note that the petitioner <u>does not dispute</u> that he was found <u>competent to stand trial</u> beyond a reasonable doubt.  Nor does the petitioner challenge either Drukteinis' conclusions or the trial court's findings as to his competency.  Instead, he maintains that, in the wake of the <u>Edwards</u> decision, a higher standard of competency is required, as a matter of federal law, to afford a mentally ill defendant the right to exercise his or her constitutional right to self-representation.

Hart v. Warden, 171 N.H. at 719 (emphasis supplied).  The
evidence on that point is unambiguous and overwhelming.  See,
e.g., Superior Court Order Denying Writ of Habeas Corpus
(document no. 40-8) at 51 of 52 ("[P]etitioner does not contest
he possessed the minimum standard of competence to stand
trial."); Hart's Notice of Appeal to N.H. Supreme Court
(document no. 44-1) at 7 ("In May of 2017, counsel filed an
amended habeas petition.  Without challenging the ruling that
Hart had been competent to stand trial, the petition advanced
claims that Hart had not been competent to represent himself at
trial, or competent to waive his right to counsel.") (emphasis
supplied); Hart's Brief to the N.H. Supreme Court (document no.
40-8) at 7 of 52 ("Question presented: whether the [trial] court
erred in denying Hart's petition for habeas corpus either
because he was not competent to represent himself, or because
the record does not establish that he knowingly waived his right
to counsel.") (emphasis supplied).  Indeed, even Hart's
memorandum in opposition to the State's motion for summary
judgment in this proceeding acknowledges that "Hart raised two
claims in state court: (1) he was not competent to represent
himself at trial, and (2) he did not knowingly, intelligently
and voluntarily waive his right to counsel."  Petitioner's

Opposition Memorandum (document no. 55-1), at 7 (emphasis
supplied).


    Hart failed to "fairly" and "recognizably" present to the
state habeas courts any claim that he was not <u>competent to stand
trial</u> (hence their failure to address such a claim).  <u>See
generally</u> <u>Picard v. Connor</u>, 404 U.S. 270, 275 (1971); <u>Jackson v.
Coalter</u>, 337 F.3d 74, 87 (1st Cir. 2003); <u>Barresi v. Maloney</u>,
296 F.3d 48, 51 (1st Cir. 2002).  His assertion that such a
challenge was somehow implicitly subsumed within his claim that
he was not <u>competent to represent himself</u> at trial is without
merit.  <u>See, e.g.</u>, Hart's Appellate Brief to N.H. Supreme Court
(document no. 40-8) (focusing exclusively on Hart's competence
to represent himself).  Consequently, any claim that he was not
competent to stand trial has not been exhausted and is not
properly before this court.  <u>See</u> 28 U.S.C. § 2254(b)(1)(A)
(providing that only after exhausting the remedies available in
state court may a petitioner seek federal habeas relief).  And,
because Hart did not raise that claim either in a direct appeal
of his convictions or in his collateral (state habeas) attack
upon those convictions, the state courts would deem the claim
waived and procedurally defaulted.  <u>See, e.g.</u>, <u>Douglas v.
Douglas</u>, 143 N.H. 419, 429 (1999) (an argument not raised, or
insufficiently briefed, is deemed waived and will not be

addressed); <u>State v. Chick</u>, 141 N.H. 503, 504 (1996) (same).
<u>See generally</u> <u>Pike v. Guarino</u>, 492 F.3d 61, 73 (1st Cir. 2007)
("A habeas claim is procedurally defaulted in either of two
situations.  First, a claim is procedurally defaulted if the
state court has denied relief on that claim on independent and
adequate state procedural grounds.  Second, a claim is
procedurally defaulted if it was not presented to the state
courts and it is clear that those courts would have held the
claim procedurally barred.") (citations omitted).

     Moreover, even if Hart had moved this court to stay these
proceedings while he pursued a (seemingly futile) effort to
exhaust that claim before the state courts (he has,
understandably, <u>not</u> sought such relief), the court would be
disinclined to grant it.  <u>See</u> <u>Rhines v. Weber</u>, 544 U.S. 269,
277-78 (2005) (cautioning courts to stay federal habeas
petitions to allow state court exhaustion "only in limited
circumstances," when the petitioner demonstrates "good cause for
his failure to exhaust, his unexhausted claims are potentially
meritorious, and there is no indication that the petitioner
engaged in intentionally dilatory litigation tactics").  Here,
Hart's decision not to raise the issue in the state courts was
obviously a deliberate one, made with the assistance of counsel.
Consequently, it is difficult to imagine how he would show "good

cause" for that failure.  Moreover, as discussed below, that
claim is not "potentially meritorious."

Finally, the court notes that even if that claim had been
properly exhausted, and even if the court were to address that
claim, and even if it were to apply the more petitioner-friendly
de novo standard of review, the trial court's ruling that Hart
was competent to stand trial would stand.  The only expert to
examine Hart, and the only expert to testify about Hart's mental
condition and abilities, unequivocally stated that, "My opinion
is that he is competent to stand trial."  Testimony of Dr.
Albert Drukteinis, Transcript of Competency Hearing (document
no. 40-3) at 17.  The trial court's decision, based upon the
uncontroverted record, was amply supported by the evidence and
the trial court properly (and reasonably) applied United States
Supreme Court precedent in reaching its conclusion that Hart was
competent to stand trial.  See generally Dusky v. United States,
362 U.S. 402 (1960); Drope v. Missouri, 420 U.S. 162 (1975).

Despite the confusion arising from Hart's filings, and in
an effort to give him the benefit of the doubt, the court will
assume that he is challenging the two claims actually presented
to, but rejected by, the New Hampshire Supreme Court (i.e.,
those claims he has properly exhausted).  That is, the court

will assume Hart is challenging the New Hampshire Supreme
Court's conclusions that: (a) he "understood the implications of
waiving his right to counsel and knowingly, intelligently, and
voluntarily waived his right to counsel," Hart v. Warden, 171
N.H. at 727; and (b) the United States Constitution does not
mandate a heightened standard of competency for a defendant who
wishes to represent himself, id. at 720-21.

II.  Waiver of Right to Counsel.

     In Faretta v. California, 422 U.S. 806 (1975), the Supreme
Court recognized that the Sixth Amendment implicitly guarantees
a criminal defendant the right to defend him or herself.  Id. at
819-20.  As a consequence, the Court held that a state cannot
impose counsel upon a defendant who has knowingly and
voluntarily elected to proceed pro se.  See Id. at 834 ("It is
the defendant, therefore, who must be free personally to decide
whether in his particular case counsel is to his advantage.  And
although he may conduct his own defense ultimately to his own
detriment, his choice must be honored out of that respect for
the individual which is the lifeblood of the law.") (citation
and internal punctuation omitted).  The Court went on to hold
that, because a pro se defendant "relinquishes many of the
traditional benefits associated with the right to counsel, . . .
he should be made aware of the dangers and disadvantages of

21

self-representation, so that the record will establish that he
knows what he is doing and his choice is made with eyes open."
Id. at 835 (citations and internal punctuation omitted).  But,
once a defendant clearly and unequivocally invokes his right of
self-representation and demonstrates that his election to
proceed without the assistance of counsel has been made
knowingly and voluntarily, that election must be honored  Id. at
836.

    Here, as noted above, the trial court insured that Hart's
waiver of his right to counsel and corresponding invocation of
his constitutionally protected right of self-representation met
all of those requirements.  In reviewing Hart's constitutional
challenge to the trial court's decision, the New Hampshire
Supreme Court plainly understood and applied the governing
federal law, as articulated by the United States Supreme Court:

> We examine the validity of a defendant's decision to
> waive counsel at the time made and upon evidence
> produced during the trial court's colloquy with a pro
> se defendant to determine whether the defendant
> clearly and unequivocally expressed his desire to
> self-represent, understood the consequences, and
> knowingly and intelligently chose to waive his right
> to counsel.

Hart v. Warden, 171 N.H. at 727 (emphasis supplied).  The court
applied that law to the facts presented and reasonably concluded

that, "[u]pon review of the record of the trial court's colloquy with the petitioner, we agree with the habeas court's finding and, thus, the trial court's conclusion, that the petitioner understood the implications of waiving his right to counsel and knowingly, intelligently, and voluntarily waived his right to counsel." Id.

Hart's criticisms of the New Hampshire Supreme Court's decision are unavailing. First, he says that he was somehow "misled" by the trial court's alleged representations that it would "assist him in getting the tools necessary for him [to] defend himself at trial." Amended Petition for Habeas Relief at 15. But see Hearing on Motion to Proceed Pro Se (document no. 40-5) at 6 ("THE COURT: Do you also understand that I can't treat you any differently than if you were represented by a lawyer; in other words, I can't kind of help you out or give you breaks, or anything like that; do you understand that? MR. HART: Yes. THE COURT: Okay. I can't cut you any slack, I guess is what I'm trying to tell you."). According to Hart, the trial court failed to follow through on its "assurance" that it would assist him "getting access to the tools he needed to defend himself." Consequently, he claims his waiver of the right to counsel was not an informed one – that is, his reliance upon

allegedly false assurances by the trial court precluded his
waiver from being a "knowing" one.

In support of that argument, Hart points to the transcript
of day one of his trial.  See Amended Petition for Habeas Corpus
at para. 55.  On that day (January 24, 2000), immediately before
jury selection, Hart moved for a continuance.  He claimed the
Hillsborough County House of Corrections had "taken pencils from
[him] for the entire month of December" (there is no mention of
his access to pencils for the month of January, nor is there an
explanation for why Hart failed to raise the issue earlier).
Trial Transcript, Day One (document no. 40-7) at 28.  As a
result, said Hart, he was unable to file a number of motions
with the trial court.  The trial court patiently entertained
Hart's argument and plausibly concluded that Hart had not been
prejudiced.  Indeed, the court noted that it had previously
addressed that (and similar) complaints from Hart "a zillion
times."  Id.  Hart was fully aware of – and repeatedly reminded
of – the difficulties that he would face while trying to prepare
a defense from jail.  He was not misled on that point by the
trial court.  See, e.g., Hearing on Motion to Proceed Pro Se
(document no. 40-5) at 7 ("When we start getting into matters
about use of the law library and everything while you are

incarcerated, that always creates problems and we will deal with those accordingly.").

Hart's claim that alleged misrepresentations by the trial court undermine his waiver of counsel, rendering it something less than knowing and voluntary, are without merit. The trial court did not "mislead" Hart. More to the point, however, the New Hampshire Supreme Court's rejection of that claim did not rest upon an unreasonable determination of the facts, nor did it result in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law.[2]

Next, says Hart, his waiver of counsel was not knowing, intelligent, and voluntary because he was not competent to waive such a vital constitutional right. In support of that claim, Hart points to the testimony of Dr. Drukteinis, the court appointed psychiatrist who examined him. According to Hart, Dr. Drukteinis testified that Hart was not capable of knowingly and voluntarily waiving his right to counsel. Amended Petition at para. 56. But, that is not a fair summary of Dr. Drukteinis's

---

[2]     As the State correctly notes, to the extent Hart is asserting that his alleged lack of access to resources necessary to prepare his case – like, pens and paper – somehow stands as an independent violation of his constitutional due process rights, such a claim has never been presented to the state courts and is unexhausted. As noted above, Hart has pursued and exhausted only two federal constitutional claims in his collateral attacks on his convictions.

testimony.  Dr. Drukteinis made two basic points: first, he
stated that, in his opinion, "the competency or ability to
defend one's self pro se is a higher threshold to being able to
stand trial."  Transcript of Competency Hearing (document no.
40-3) at 18.  That view of the law is, as discussed below, not
entirely correct.

Next, Dr. Drukteinis opined that Hart's "tendency to get
into peripheral matters and tangential matters [would] really
hurt his own defense" and, for that reason, Hart likely failed
to fully appreciate how difficult it would be to represent
himself.  Id. (emphasis supplied).  See also id. at 27 (opining
that Hart would "be seriously hampered defending himself pro se"
by his inability to stay focused on the essential elements of
his arguments).  Perhaps the essence of Dr. Drukteinis's
testimony on this point was best captured in this exchange with
the trial court:

> THE COURT:  If I understand you correctly in the sense
> that he's competent to waive his right to counsel, it
> is just that like any pro se counsel he might, no
> matter how much we tell him, he might not understand
> how difficult it is to be his own lawyer?
>
> THE WITNESS:  I think it might be a little more than
> that.  I think [Mr. Hart] understands his right to
> have counsel, that he has a right to that counsel, and
> he would be waiving that, but I don't think he
> understands how his own abilities, coupled with his
> paranoid thinking are going to prevent him from doing

anything close to what needs to be done [to present an
adequate defense]."

Id. at 30.  But, the inquiry into whether a criminal defendant

has knowingly and voluntarily waived his right to counsel (and

thereby invoked his constitutionally protected right of self-

representation) does not involve an assessment of how well the

defendant might actually perform in court.  Nor does it involve

an assessment of how his physical, emotional, intellectual, or

mental health limitations might render him less capable than an

attorney (or even another pro se defendant) in presenting an

effective defense.  That he would be better served by appointed

counsel (as is nearly always the case) does not render the

exercise of his right of self-representation either involuntary

or unknowing.

> In Faretta, we held that a defendant choosing self-
> representation must do so "competently and
> intelligently," but we made it clear that the
> defendant's "technical legal knowledge" is "not
> relevant" to the determination whether he is competent
> to waive his right to counsel, and we emphasized that
> although the defendant "may conduct his own defense
> ultimately to his own detriment, his choice must be
> honored."  Thus, while "[i]t is undeniable that in
> most criminal prosecutions defendants could better
> defend with counsel's guidance than by their own
> unskilled efforts," a criminal defendant's ability to
> represent himself has no bearing upon his competence
> to choose self-representation.

Godinez v. Moran, 509 U.S. 389, 399-400 (1993) (citations
omitted; emphasis in original).  Pro se criminal defendants
rarely fully appreciate how their own limited legal abilities
will preclude them from presenting the type of defense that a
capable lawyer could mount – indeed, they often (mistakenly)
believe that they can present a better defense than trained
legal counsel.  Yet, that misapprehension does not invalidate an
otherwise proper invocation of the constitutionally protected
right of self-representation.

In short, Hart's arguments lack merit.  But, more
importantly, the New Hampshire Supreme Court's determination
that Hart properly waived his right to counsel cannot be said to
have been "based on an unreasonable determination of the facts
in light of the evidence presented in the State court
proceeding."  28 U.S.C. § 2254(d)(2).  Nor can that court's
reasoning be said to have "resulted in a decision that was
contrary to, or involved an unreasonable application of, clearly
established Federal law, as determined by the Supreme Court of
the United States."  28 U.S.C. § 2254(d)(1).

III.  Heighten Standard of Competency for Pro Se Defendants.

To the extent Hart still presses his argument (as advanced
before the New Hampshire Supreme Court) that the decision in

<u>Indiana v. Edwards</u>, 554 U.S. 164 (2008), mandates application of
a higher standard of competency to a defendant who wishes to
represent himself, that argument also fails.  In <u>Edwards</u>, the
Court considered whether a state could <u>deny</u> a "gray-area"
defendant the constitutional right to represent himself (here,
of course, Hart was <u>permitted</u> to exercise that right).  The
Court defined so-called "gray-area" defendants as those who are
competent to stand trial but likely fall short of the "somewhat
higher standard that measures mental fitness for another legal
purpose."  <u>Id</u>. at 172.  Thus, the question before the <u>Edwards</u>
Court was this:

> We assume that a criminal defendant has sufficient
> mental competence to stand trial (i.e., the defendant
> meets <u>Dusky's</u> standard) and that the defendant insists
> on representing himself during that trial.  We ask
> <u>whether the Constitution permits a State to limit that</u>
> <u>defendant's self-representation right</u> by insisting
> upon representation by counsel at trial — on the
> ground that the defendant lacks the mental capacity to
> conduct his trial defense unless represented.

<u>Id</u>. at 174 (emphasis supplied).  The Court answered that
question in the affirmative, holding that:

> the Constitution <u>permits</u> judges to take realistic
> account of the particular defendant's mental
> capacities by asking whether a defendant who seeks to
> conduct his own defense at trial is mentally competent
> to do so.  That is to say, the Constitution <u>permits</u>
> States to insist upon representation by counsel for
> those competent enough to stand trial under <u>Dusky</u> but
> who still suffer from severe mental illness to the

point where they are not competent to conduct trial
proceedings by themselves.

Id. at 177-78 (emphasis supplied).  In other words, state courts
may impose counsel on certain "gray area" defendants without
violating those defendants' constitutionally protected right of
self-representation.


Before the New Hampshire Supreme Court, Hart asserted that,
"in the wake of the Edwards decision, a higher standard of
competency is required, as a matter of federal law, to afford a
mentally ill defendant the right to exercise his or her
constitutional right to self-representation."  Hart v. Warden,
171 N.H. at 719.  That is, Hart claimed that, despite his
otherwise valid invocation of his right of self-representation,
the trial court was constitutionally compelled to deny him that
right and impose upon him, against his expressed wishes, the
assistance of appointed counsel.  According to Hart, the trial
court's failure to overrule his clearly-expressed desire to
represent himself violated the United States Constitution.


In addressing Hart's claim, the New Hampshire Supreme Court
recognized that Edwards created a permissive rule that allows
(but does not compel) states to insist that so-called "gray
area" defendants be represented by counsel.  Moreover, it noted

that Hart's interpretation/extension of <u>Edwards</u> was unsupported

by precedent:

> Even if the petitioner fell within the "gray area" of
> competency contemplated by <u>Edwards</u>, he cites no
> federal authority, and we cannot find any federal
> support, for his proposition that a heightened
> standard of competency must be applied such that trial
> courts are required to force representation upon "gray
> area" defendants at trial.  Because no such
> requirement exists under federal law, the petitioner's
> claim based upon the Federal Constitution cannot be
> sustained.

<u>Id</u>. at 721 (citation omitted).


The New Hampshire Supreme Court properly rejected Hart's

assertion that the Constitution (as interpreted by the <u>Edwards</u>

Court) <u>required</u> the trial court to reject Hart's otherwise valid

invocation of his right of self-representation and to impose

trial counsel upon him against his will.  In reaching that

conclusion, the New Hampshire Supreme Court neither

misapprehended the factual record nor misapplied clearly

established Supreme Court precedent.  <u>See</u> 28 U.S.C. § 2254(d).


## Conclusion

For the reasons set forth in the State's motion to dismiss

(document no. 44), Hart's federal habeas corpus petition is

likely untimely.  Hart's conviction became "final" in February

of 2001.  At that point, he had one year within which to file
his federal habeas petition.  <u>See</u> 28 U.S.C. § 2244(d)(1)
(establishing a one-year limitations period for habeas petitions
filed by individuals in state custody).  He did not file the
pending petition until May of 2018 – more than seventeen years
later.  For that petition to have been timely filed, Hart would
have to demonstrate that his mental illness was so acute that it
severely impaired his ability to effectively pursue legal relief
on his own behalf for a continuous and uninterrupted period of
roughly fifteen years.  Given his extensive litigation history
in both state and federal courts during many of those years, it
is unlikely he could sustain that burden.  Nevertheless, even
assuming Hart's petition is timely, he cannot prevail on the
merits.

    In his post-trial collateral challenge to his convictions,
Hart presented two legal arguments to the New Hampshire Supreme
Court: (a) that he did not validly waive his constitutionally
protected right to representation by legal counsel; and (b) that
"the Federal Constitution mandates a higher minimum standard of
competency for defendants who seek to represent themselves at
trial than the minimum standard of competency to stand trial
with the assistance of counsel."  <u>Hart v. Warden</u>, 171 N.H. at
719.  The court rejected both of those claims on the merits.

That decision was not the product of an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2), nor was that decision contrary to, nor did it involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1).

For the foregoing reasons, as well as those set forth by the State in its legal memoranda (documents no. 52-1 and 56), Respondent's Motion for Summary Judgment (document no. 52) is granted. Hart's Amended Petition for Writ of Habeas (document no. 40) is denied. The Clerk of Court shall enter judgment in accordance with this order and close the case.

Because Hart has not "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the court declines to issue a certificate of appealability. Hart may, however, seek such a certificate from the court of appeals under Federal Rule of Appellate Procedure 22(b). See Rule 11, Federal Rules Governing Section 2254 Cases (2010); 28 U.S.C. § 2253(c).

**SO ORDERED.**

Steven J. McAuliffe
United States District Judge

May 5, 2020

cc:  Donna J. Brown, Esq.
     Elizabeth C. Woodcock, Esq.